# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| Jason Allen Brown | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 15 C 2498 |
| | ) | |
| v. | ) | |
| | ) | Judge Charles R. Norgle |
| City of Chicago, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Jason Allen Brown, filed this 42 U.S.C. § 1983 civil rights action regarding his detainment and arrest by the Chicago Police Department in September 2014. Named as Defendants are Chicago Police Department employees Sergeant Sanchez, Officer Bridges, Officer Konior, Officer Louie, Officer Randolph, Officer Rattler, Sergeant O'Donnell, Sergeant Garvey, and Lt. Robinson. This matter is now before the Court for ruling on Defendants' partial motion for summary judgment (Dkt. 94). For the reasons stated herein, Defendants' motion is granted in part and denied in part.

## Legal Standard

### A. Federal Rule of Civil Procedure 56

Pursuant to Federal Rule of Civil Procedure 56(a), this Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To establish that a material fact is undisputed, a party "must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Rule

56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Rule 56(c)(3). Courts must "construe all facts and draw all reasonable inferences in favor of the nonmoving party." *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the allegations of his complaint and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence "to permit a jury to return a verdict for" the nonmoving party. *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010); *Carroll*, 698 F.3d at 564 ("[m]ere metaphysical doubt" about material facts is not enough).

## B. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Under Local Rule 56.1(a)(3), the moving party must provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (quoting N.D. Ill. L.R. 56.1(a)); *see also* Fed. R. Civ. P. 56(c). The opposing party must then "file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits,

2

parts of the record, and other supporting materials relied upon.'" *Cracco v. Vitran, Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (quoting N.D. Ill. L.R. 56.1(b)(3)(B)). The opposing party may also present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008) (citing N.D. Ill. L.R. 56.1(b)(3)(C)). A court may consider true any uncontested fact in the movant's Rule 56.1 Statement that is supported by the record and is not addressed by the opposing party. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *see also* Fed. R. Civ. P. 56(e)(2); Local Rule 56.1(b)(3)(C).

Defendants submitted Statements of Uncontested Facts, (Dkt. 98), to which Plaintiff responded. (Dkt. 104). Plaintiff also submitted a memorandum (Dkt. 103) responding to Defendants' legal memorandum (Dkt. 95).

Defendants argue in their reply brief that Plaintiff's response to their Local Rule 56.1 Statement of Facts is improper in several ways, in that Plaintiff: (1) in some instances fails to provide specific references to the record; and (2) offers nothing more than legal arguments or conclusions. Defendants contend that because Plaintiff failed to comply with Local Rule 56.1, their statement of facts should be deemed admitted.

Even to the extent Plaintiff failed to completely comply with Local Rule 56.1, it would not "automatically result in judgment for the movant," as "[t]he ultimate burden of persuasion remains with [the movant] to show that [he] is entitled to judgment as a matter of law." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Where Defendants' statements are properly supported by the cited materials and are not otherwise disputed by evidence Plaintiff raises, including his deposition testimony (Dkt. 98-4), the Court will consider those statements as undisputed. *See* Local Rule 56. 1(b)(3)(C). But, where Plaintiff has pointed to evidence

contrary to Defendants' statements of fact in in the record or could properly testify himself about the matters asserted, the Court will consider that evidence. *See Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013); Fed. R. Evid. 602. The Court will, however, not dig through the record to identify disputed issues of fact that are not otherwise supported. *See Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) ("In considering a motion for summary judgment, the district court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies.") *see also Almy v. Kickert Sch. Bus Line, Inc.*, No. 08-cv-2902, 2013 WL 80367, at *2 (N.D. Ill. Jan. 7, 2013) ("[C]ourts are not required to 'wade through improper denials and legal arguments in search of a genuinely disputed fact.'") (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)). And, of course, the Court will not consider factual statements as refuted by purely legal arguments, incomplete responses that lack evidentiary support, or responses that are inconsistent with deposition testimony.

With these guidelines established, the Court turns to the facts of this case.

## Facts

**A. Defendants' Account**

On September 9, 2014, Defendants Officers Bridges, Louie, Konior, Sanchez, Rattler, Randolph and Lt. Robinson were part of a narcotics team that conducted controlled narcotics purchases. (Dkt. 98, DSOF at ¶¶ 6-11, 14-20.) On this date, the Defendant officers were working in the area of 16th and Lawndale, an area well-known for narcotics sales. (DSOF at ¶ 21.) The officers had set up on the block and conducted surveillance on a group of male individuals suspected of selling narcotics. (DSOF at ¶¶ 24-25.) Officer Bridges, who was working in an undercover capacity, approached one of the men and purchased two bags of heroin

in exchange for a twenty dollar bill of pre-recorded 1505 funds. (DSOF at ¶¶ 28, 30.) Officers Louie, Randolph, Rattler, and Lt. Robinson observed this narcotics transaction. (DSOF at ¶ 35.) Each of these officers identified Plaintiff, Jason Allen Brown, as the person who sold narcotics to Officer Bridges. (DSOF at ¶ 36.)

After the narcotics sale, the subject left the scene and proceeded to another location to retrieve additional narcotics. (DSOF at ¶¶ 37, 30.) Officers Randolph, Rattler, and Lt. Robinson followed the subject and when he reemerged from a residence at 1910 S. Ridgeway, Lt. Robinson ordered Officers Konior and Sanchez to detain him. (DSOF at ¶¶ 38-40.) Based on the representations of the surveillance officers, Officers Konior and Sanchez detained Plaintiff at 3729 W. 19th street. (DSOF at ¶ 40.) As Officers Bridges and Louie drove by, Officer Bridges, communicated that Plaintiff was the person that had just engaged in a narcotics transaction with the officer. (DSOF at ¶ 41.) Officers Sanchez and Konier then placed Plaintiff under arrest, and Officer Konier conducted a custodial search, finding the pre-recorded funds on Plaintiff's person. (DSOF at ¶¶ 42-43.) Those funds were inventoried. (DSOF ¶ 45.)

After Plaintiff was arrested, Officers Sanchez and Konier drove him from 3729 W. 19th Street to the address on his driver's license, 1910 S. Ridgeway in Chicago, where Officer Sanchez gave Plaintiff's belongings to one of Plaintiff's neighbors. (DSOF at ¶ 49.) Officers Sanchez and Konier then drove Plaintiff from 1910 S. Ridgeway to the police station located at Homan Avenue and Fillmore Avenue, in Chicago. (DSOF at ¶ 50.) Plaintiff arrived at the police station and was handcuffed to a bench. (DSOF at ¶ 54.) At this point, Plaintiff did not have any further contact with officers Konier, Bridges, Louie, Rattler, Randolph, or Lt. Robinson. (DSOF at ¶ 55.) Officer Sanchez conducted an additional custodial search of Plaintiff at the police station. (Dkt. 98, Ex. F ¶ 38.) During the search, Plaintiff reached into the

front of his pants and pulled out additional narcotics. (Dkt. 98, Ex. F ¶ 39.) These narcotics were inventoried. (DSOF ¶ 48.)

Plaintiff was charged with unlawful delivery of a controlled substance while on school property and possession of a controlled substance, and processed in lockup. (DSOF at ¶¶ 56-57.)

## B. Plaintiff's Account

On September 9, 2014, Plaintiff did not sell drugs to anyone. (P's Dep. at 74.) On that day, he left his house at 1910 S. Ridgeway to go pick up his children from their aunt's house. (Dkt. 98 at Ex. E, P's Dep. at 23-24.) After he had walked a short way and as he was tucking in his shirt, Officers Sanchez and Konier[1] stopped him and asked him if he knew who was responsible for a recent homicide in the neighborhood. (P.'s Dep. at 24-25.) Plaintiff told them he knew nothing about the homicide, but they continued to ask Plaintiff questions. (P.'s Dep. at 25.) Officer Konier then handcuffed Plaintiff and searched his pockets. (P's Dep. at 25, 30.) He took out his I.D., money, and social security card and gave them to Officer Sanchez. (P.'s Dep. at 25.) Officer Sanchez also searched Plaintiff by grabbing at his pants. (P.'s Dep. at 29-30.) Officers Sanchez and Konier then placed Plaintiff in their car and drove the short way back to 1910 S. Ridgeway, where they gave his belongings to his downstairs neighbor. (P.'s Dep. at 30-32.)

Officers Sanchez and Konier then drove Plaintiff to an alley. (P.'s Dep. at 33-34.) They questioned him for about four minutes about the homicide, and also repeatedly said that they knew Plaintiff "had something on him" and asked him why he was tucking in his shirt. (P.'s Dep. at 34-35.) Officer Sanchez then put on latex gloves, said he knew Plaintiff "had something

---

[1] In his amended complaint, Plaintiff incorrectly identified Sanchez' partner and the driver of the car as Officer Bridges instead of Officer Konier. At his deposition, Plaintiff explained that he did not know the driver's name. He does not now dispute that Sanchez' partner, and the driver of their car, was Officer Konier, not Officer Bridges.

6

on [him]", and pulled down Plaintiff's pants. (P.'s Dep. at 43.) Officer Sanchez hunched over the front seat and performed an anal cavity search on Plaintiff who was sitting in the backseat. (P.'s Dep. at 44-50.) Plaintiff initially struggled, but stopped because the movements tightened his handcuffs. (P.'s Dep. at 49.) The search lasted less than a minute. (P.'s Dep. at 58.) Officer Sanchez pulled a plastic bag wrapped around six individual bags of heroin from Plaintiff's anus. (P.'s Dep. at 38, 49-50.) Officer Konier did not participate in the search. (P.'s Dep. at 60.)

Plaintiff explained at his deposition that just prior to leaving his house (1910 S. Ridgeway) on September 9, 2014, he had used heroin. (P.'s Dep. at 39.) He testified that he was high off the heroin as well as psychiatric medications at the time he was arrested. (P.'s Dep. at 39.) He also testified that he had drank tequila that day; at the time he was arrested he described himself as "tipsy", but "not drunk". (P.'s Dep. at 41-42.) Plaintiff also explained that earlier that day he had purchased heroin for his personal use. (P.'s Dep. at 38-39.) He testified that just before he came out of his house, he put the rest of the heroin in his anus because he wanted to keep it hidden and he knows the police are not supposed to search him there. (P.'s Dep. at 38-39.)

After the search, Officers Konier and Sanchez drove Plaintiff to the police station at Homan and Filmore, took him into a room, and handcuffed him to a bench. (P.'s Dep. at 53-55.) Plaintiff told both Officers Sanchez and Konier on the way to the police station that he needed medical attention. (P.'s Dep. at 65-66.) Once at the police station, Plaintiff felt pain, reached into his pants, and saw specs of blood. (P.'s Dep. at 63.) Officer Sanchez and a female officer then came into the room and asked him more questions about the homicide. (P.'s Dep. at 57.) Plaintiff asked them for medical attention because his rectum was bleeding. (P.'s Dep. at 57.) These three officers denied his requests for medical attention – they "basically" said they "don't

7

care" and "they have something from [Plaintiff]"; which Plaintiff testified was a response to Plaintiff not giving them information about the homicide. (P.'s Dep. at 68.) Plaintiff did not ask anybody else at this police station for medical attention. (P's Dep. at 153.) Shortly after that, Officer Konier and Sanchez transferred Plaintiff to the police station at Harrison and Kedzie. (P.'s Dep. at 69.) Plaintiff also told "officers" at Harrison and Kedzie that he needed medical attention, but they also did nothing. (P's Dep. at 72.)

## Analysis

As required under 28 U.S.C. § 1915A, the Court previously screened Plaintiff's amended complaint and based on the allegations therein, permitted Plaintiff to proceed on four Fourth Amendment claims: (1) unlawful seizure of Plaintiff based on the initial stop and detainment (Count I); (2) false arrest of Plaintiff on sham drug charges (Count II); (3) unlawful search based on the alleged body-cavity search (Count III); and (4) denial of medical attention (Count IV). (Dkt. No. 33.) Defendants now seek to dismiss certain Defendants from Counts I, III, and IV for lack of personal involvement and seek judgment in all their favors on the merits as to Count II.

### I. Lack of Personal Involvement – Counts I, III, and IV

Defendants do not seek complete summary judgment as to Count I (unlawful seizure), Count III (unlawful body cavity search), or Count IV (denial of medical attention), and thus Defendants' motion does not address the substantive merits of these three claims. Nor, accordingly, does this Opinion.

Instead, Defendants seek merely to dismiss certain Defendants from each of those claims for their lack of personal involvement. Section 1983 creates a cause of action based on personal liability and predicated on fault so to be held liable, an individual must have caused or participated in a constitutional deprivation. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir.

2012); *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005). And for a supervisor to be held liable under Section 1983 for acting in his supervisory role, a plaintiff must show that the supervisor directed the constitutional deprivation or that it occurred with his "knowledge and consent." *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003). As set forth below, Defendants' motion based on lack of personal involvement is granted in part and denied in part.

### A. Count I (Unlawful Seizure)

In order to make out a claim under Section 1983 for an unreasonable seizure in violation of the Fourth Amendment, a plaintiff must allege that the defendant's conduct constituted a seizure, and that the seizure was unreasonable. *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 637 (7th Cir. 2008). An official seizure like Plaintiff's initial detainment is ordinarily unreasonable unless it is supported by probable cause, even where no formal arrest is made. *See Jacobs v. City of Chicago*, 215 F.3d 758, 772 (7th Cir. 2000) (citing *Michigan v. Summers*, 452 U.S. 692, 696 (1981)).

Defendants contend that Defendants O'Donnell, Garvey, Konier, Louie, Randolph, Rattler, and Robinson should be dismissed from this claim. The Court agrees with respect to Defendants Garvey and O'Donnell. Sgt. Garvey testified that on September 9, 2014, he was acting as a desk sergeant in police district 010, which is where the incident giving rise to the arrest occurred. (DSOF ¶ 59.) Plaintiff was never in a 010 police station or lockup. (DSOF ¶ 59.) Sgt. Garvey testified that his only involvement in the case was to approve the probable cause listed on Plaintiff's arrest report, and that he did so based on the narrative section, which described that Plaintiff was arrested after being positively identified by an undercover officer as having sold him illegal narcotics. (DSOF ¶¶ 59-60.) Sgt. Garvey had no personal interaction

9

with Plaintiff. (DSOF ¶ 59.) Sgt. O'Donnell testified that she was working as District Supervisor in the 011 district on September 9, 2014. (DSOF ¶ 64.) She testified that she was responsible for final approval of the charges against Plaintiff, and she had no other involvement in the case. (DSOF ¶ 64.) Like Sgt. Garvey, her approval was based solely on the narrative section of the arrest report. (DSOF ¶ 66.) Sgt. O'Donnell had no personal interaction with Plaintiff. (DSOF ¶ 64.) This testimony establishes that neither Sgt. Garvey nor Sgt. O'Donnell caused or participated in the alleged unlawful seizure. *See Dishman v. Cleary*, No. 07 C 5626, 2011 WL 1261098, at *5 (N.D.Ill. Mar. 29, 2011) (finding that officers who did not have any interaction with the plaintiff at the scene of his arrest were entitled to summary judgment); *Wilbon v. Plovanich*, 67 F. Supp. 3d 927, 944–45 (N.D. Ill. 2014) (same). Plaintiff has failed to submit any evidence that disputes O'Donnell or Garvey's testimony or that otherwise tends to suggest that they had knowledge of or consented to a constitutional violation. Summary judgment is often referred to as "the 'put up or shut up' moment in litigation," where "the non-moving party is required to marshal and present the court with the evidence []he contends will prove her case." *Goodman v. Natl. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) (quoting *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 476 (7th Cir. 2010)). Plaintiff cannot merely speculate that Sgts. Garvey and O'Donnell knew that the controlled buy described in the arrest report was allegedly falsified.

However, with respect to Defendants Konier, Louie, Randolph, Rattler, and Robinson, the Court disagrees that a lack of personal involvement is undisputed. Defendants' own account demonstrates that they each played an active role in the controlled buy that Defendants say led to the seizure and arrest. And although under Plaintiff's account he personally interacted with only Defendants Konier and Sanchez, Plaintiff maintains that the controlled buy was fabricated by all

10

the officers who, according to his arrest documents, claimed to play an active role in the sham operation, *i.e.,* Defendants' Bridges, Konier, Louie, Randolph, Rattler, Robinson, and Sanchez.

Accordingly, Defendants Garvey and O'Donnell are dismissed from Count I. Plaintiff may proceed on his unlawful seizure claim against only Defendants Bridges, Konier, Louie, Randolph, Rattler, Robinson, and Sanchez.

### B.    Count III (unlawful body search)

To be lawful, the body cavity search, which according to Plaintiff did not occur incident to a formal arrest, needed to be based upon at least the reasonable suspicion of the officers that Plaintiff was concealing contraband. *See Campbell v. Miller,* 499 F.3d 711, 716-18 (7th Cir. 2007). Then, even if justified, the search also must have been conducted in a reasonable manner. *Id.* at 719.

Defendants argue that O'Donnell, Garvey, Bridges, Konier, Louie, Randolph, Rattler, and Robinson are entitled to summary judgment on Plaintiff's unlawful body search claim for lack of personal involvement, and this Court agrees. Defendants testified that O'Donnell, Garvey, Bridges, Konier, Louie, Randolph, Rattler, and Robinson did not conduct an anal cavity search of Plaintiff and that all of the above except Defendant Konier were not even present during the alleged search. (DSOF ¶ 49.) This testimony establishes their lack of personal involvement. Plaintiff has failed to submit any evidence that disputes this evidence, which he must do at this stage. *See Goodman,* 621 F.3d at 654. He himself testified that only Defendant Sanchez conducted the search.

Defendants O'Donnell, Garvey, Bridges, Konier, Louie, Randolph, Rattler, and Robinson are therefore dismissed from Count III. Plaintiff may therefore proceed on his unlawful body search claim against only Defendant Sanchez.

11

### C. Count IV (denial of medical attention)

Plaintiff's Fourth Amendment denial of medical care claim is governed by the reasonableness standard. *See Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). Four factors inform whether an officer's response to an arrestee's medical needs was objectively unreasonable: (1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns. *Id.*

Defendants argue that O'Donnell, Garvey, Bridges, Louie, Randolph, Rattler, and Robinson are entitled to summary judgment on Plaintiff's denial of medical attention claim for lack of personal involvement, and this Court agrees. There is no evidence of record tending to demonstrate that these Defendants had knowledge or reason to believe that Plaintiff was in need of medical care. (DSOF ¶¶ 68-73.) Defendants' and Plaintiff's testimony establishes that Plaintiff did not ask these Defendants for medical care; he made his request for medical attention in the presence of only Defendants Sanchez and Konier. (*Id.*) Defendants' testimony also establishes that Plaintiff never complained to these Defendants that an anal cavity search had been performed, nor were his injuries visible or obvious to these Defendants. (*Id.*) Plaintiff has failed to submit any evidence that disputes Defendants' evidence, which he must do at this stage. *See Goodman*, 621 F.3d at 654.

Defendants O'Donnell, Garvey, Bridges, Louie, Randolph, Rattler, and Robinson are therefore dismissed from Count IV. Plaintiff may proceed on his denial of medical attention claim against only Defendants Sanchez and Konier.

12

## II.     The Merits – Count II (False Arrest).

Defendants argue that they are entitled to summary judgment on the false arrest claim because they had probable cause to arrest Plaintiff. Probable cause is an absolute defense to a claim of false arrest. *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017). "Probable cause to arrest exists if the totality of the circumstances known to the officer at the time of the arrest would warrant a reasonable person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013). The jury must determine the existence of probable cause " 'if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them.' " *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1013–14 (7th Cir. 2006) (quoting *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)).

Here the events leading up to Plaintiff's arrest (which would supply probable cause) are plainly in dispute. Defendants contend: (1) that Defendants Louie, Randolph, Rattler, and Robinson witnessed Plaintiff sell narcotics in a controlled buy to undercover officer Defendant Bridges and then ride away on a bicycle to retrieve more drugs; (2) that these Defendants then directed Defendants Sanchez and Konier to detain Plaintiff; (3) that Defendant Bridges then drove to where Plaintiff was detained and identified him as the person who sold him the narcotics; and (4) that Defendants Sanchez and Konier therefore placed Plaintiff under arrest. Plaintiff, by contrast, testified that he did not sell narcotics to Officer Bridges and that the controlled buy was a sham. He testified that Defendants Sanchez and Konier detained, handcuffed and searched him – while asking him questions about a homicide — after seeing him merely walk out of his house and tuck in his shirt.

The court's job as to "a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contest, or decide which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). At summary judgment the Court must credit Plaintiff's version of events. *See Anderson*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). No finding of arguable or actual probable cause could survive after adopting Plaintiff's version of the facts.

Defendants nonetheless contend that summary judgment should be granted on the false arrest claim because Plaintiff admitted at his deposition that he was high on heroin and possessed heroin at the time that he encountered Defendants Sanchez and Konier. Citing the rule that probable cause to believe a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause, *see, e.g., Pourghoroshi v. Flying J, Inc.*, 449 F.3d 751, 762 (7th Cir. 2006), Defendants contend that Plaintiff's admissions demonstrate that they had probable cause to arrest Plaintiff at the time he exited his house. Plaintiff's admissions, according to Defendants, establish that he was committing/had committed the crimes of both possession and use of a controlled substance. *See* 720 Ill. Comp. Stat. 570.0/401, 402-C (2016).

Defendants' argument is misguided. Although their statement of the law is correct — probable cause to arrest for any crime does precludes a false arrest claim for all crimes – Defendants' citation to that rule here "puts the cart before the horse". Defendants have not identified any *undisputed* evidence that they were aware of *at the time of Plaintiff's arrest* that would have suggested that he used or possessed narcotics. The fact that Plaintiff later, long after he was arrested, admitted that he possessed heroin is not relevant to the probable cause

determination, which is an *ex ante* test. *See Smith v. Ball State Univ.*, 295 F.3d 763, 769–70 (7th Cir. 2002) ("the fact that the officer later discovers additional evidence unknown to her at the time of the arrest is irrelevant as to whether probable cause existed at the crucial time") (citing *Qian v. Kautz*, 168 F.3d 949, 954 (7th Cir. 1999)); *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007) ("[t]he fact that an officer later discovers additional evidence unknown to her at the time of the arrest ... is irrelevant-[the court] only care[s] about what the officer knew at the time the decision was made."); *United States v. Carrillo*, 269 F.3d 761, 766 (7th Cir. 2001) ("Whether probable cause exists "turns on the information known to the officers at the moment the arrest [was] made, not on subsequently received information.") (citing *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 2000)); *Maltby v. Winston*, 36 F.3d 548, 557 (7th Cir. 1994) (any evidence that "came to light after the arrest is not relevant to the probable cause inquiry"); *United States v. Walker*, No. 1:05-CR-70, 2006 WL 2849732, at *7 (N.D. Ind. Oct. 3, 2006) ("informant's testimony at an evidentiary hearing held after an arrest would be of questionable assistance in the probable cause determination, since officers are required to have probable cause at the time the arrest was made and cannot rely upon additional evidence uncovered after the fact"). The evidence here that Defendants were actually aware of at the time of the arrest – whether tending to show Plaintiff used, possessed, or distributed narcotics – is disputed. Thus, there can be no finding of probable cause as a matter of law. There are issues of material fact as to whether probable cause for the arrest existed.

Lastly, Defendants argue that they are entitled to qualified immunity. "Qualified immunity shields government officials from liability under Section 1983 'for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gruenberg v. Gempeler*,

697 F.3d 573, 578 (7th Cir. 2012) (citation omitted). Courts must "consider whether the alleged facts demonstrate a constitutional violation, and whether the constitutional right was clearly established." *Id.*, citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Here the factual dispute as to the events of September 9, 2014, precludes summary judgment in favor of Defendants on qualified immunity grounds because the determination of whether a reasonable officer in Defendants' positions would have believed they had probable cause to arrest Plaintiff depends on which version of events is believed. "The Seventh Circuit has noted that it is inappropriate to grant summary judgment on qualified immunity grounds where it requires the court to decide what the facts were when an officer made an arrest." *Ryan–Louie v. DeFazio*, No. 2:05-CV-249, 2007 WL 433067, at *6 (N.D. Ind. Feb. 2, 2007) (citing *Morfin v. City of E. Chi.*, 349 F.3d 989, 1000 n.13 (7th Cir. 2003)).

Therefore summary judgment as to the merits of Count II is denied. Defendants Grady and O'Donnell, however, are dismissed from this claim for the same reasons explained above dismissing them from the unlawful detention claim (Count I).

## Conclusion

Defendants' partial motion for summary judgment [94] is granted in part and denied in part. Based on the accompanying Opinion, the Court orders the following: (1) Defendants O'Donnell and Garvey are dismissed from this action; (2) Plaintiff may proceed on Count I (unlawful seizure claim) and Count II (false arrest claim) against only Defendants Bridges, Konier, Louie, Randolph, Rattler, Robinson, and Sanchez; (3) Plaintiff may proceed on Count III (unlawful body cavity search) against only Defendant Sanchez; and (4) Plaintiff may proceed on Count IV (denial of medical attention claim) against only Defendants Konier and Sanchez.

1-30-18

16